UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

In re:  Gerald T. Woods

       Debtor                                            CASE NO. 08-31591
                                                              CHAPTER    7

Issacs Cars, Inc.
       f/k/a Autorama, Inc.

       Plaintiff

vs.

Gerald T. Woods

       Defendant                                   Adv. Proc. No. 08-03096

**MEMORANDUM OPINION**

THIS ADVERSARY PROCEEDING is before the Court after the conclusion of a trial on the merits of the cause of action brought by Plaintiff against Defendant under 11 U.S.C. § 727(a)(4)(A) and 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6). At trial, Plaintiff withdrew his claim under 11 U.S.C. § 727(a)(4)(A). For the reasons set forth below, the Court determines that Defendant is entitled to a discharge under 11 U.S.C. §727 and that Defendant's debts to Plaintiff are dischargeable. By virtue of 28 U.S.C. § 157(b)(2)(J) this is a core proceeding. The following constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr. P. 7052.

FINDINGS OF FACT

Defendant is the co-owner of AutoSource-USA, LLC ("AutoSource"), a used car dealership. In 1999, AutoSource entered into a "Revolving Floor Plan Loan and Security Agreement" with Plaintiff to obtain floor plan financing. Under the terms of the Agreement, Plaintiff advanced a line of credit to AutoSource for the purpose of purchasing vehicles. AutoSource agreed to hold the

vehicles and any proceeds from their sale in trust until Plaintiff received complete payment of the indebtedness.  Plaintiff possessed the original titles of the vehicles for which it provided credit.  Upon complete payment, Plaintiff transferred the titles to either AutoSource or the third-party purchasers.  Defendant personally guaranteed the Agreement.

The parties stipulate that between June and December of 2007, AutoSource sold twenty-seven vehicles out of trust, meaning that the vehicles were sold to third-party purchasers only to then be put on Plaintiff's line of credit.  This scheme was achieved by providing Plaintiff with the original titles to the vehicles, while simultaneously dodging the requests of the third-party purchasers for the titles.  Thus, AutoSource was able to collect twice for each vehicle.  When AutoSource collapsed, Plaintiff was owed $98,050 for the vehicles.

Defendant testified, credibly, that in 2007 he was involved in AutoSource in the limited capacity of repairing and selling automobiles.  Defendant also worked part-time for another dealership, Bachman Chevrolet, as a used car manager.  Defendant testified that he spent on average one hour a week working at AutoSource.  During this time, Defendant continued to write checks on behalf of AutoSource.

Despite his limited involvement, associates typically contacted Defendant before his brother, Kenneth Woods ("Ken"), also a co-owner of AutoSource, to discuss their concerns about the business.  Leland Issacs, owner and chief operating officer of Plaintiff, testified that when inventory checks revealed that vehicles were missing from AutoSource, he called Defendant.  Issacs inquired as to the missing vehicles, and Defendant responded that he would have to get in touch with his brother to find out more information.  Defendant, however, failed to investigate the whereabouts of the missing vehicles himself.

Defendant was not present at the dealership when the twenty-seven cars were sold out of trust.  Ken informed Defendant that the missing vehicles were either being serviced or cleaned.  When Defendant inquired as to whether or not the vehicles needed to be paid for, Ken responded that he would take care of the matter.  Defendant testified that he had no reason not to believe Ken since he had always handled such situations successfully in the past.

Defendant was aware of the financial troubles facing AutoSource.  On February 23, 2007, Quality Auto Wholesale, LLC ("Quality Auto") sued AutoSource and Defendant personally for breach of contract for AutoSource's failure to pay for sixty-three automobiles purchased from

Quality Auto. Shortly thereafter, Defendant transferred the titles of two vintage vehicles owned by AutoSource to his wife, Carol J. Woods, for a reported sixty-five hundred dollars in cash. No receipts of the transaction exist, and Defendant maintains that the vehicles were sold to raise AutoSource's capital.

A settlement was reached with Quality Auto. Then, on October 26, 2007, Defendant received a demand letter from CIT Small Business Lending Corporation stating that AutoSource and Kenger, LLC, another business co-owned by Defendant and his brother, were in default for failure to make loan payments. Defendant testified that he relied on Ken to solve these matters, in part because at some point in 2007 Ken had sold land he personally owned to infuse capital into AutoSource. In 1999, Defendant had a fifty percent ownership interest in AutoSource. In 2007, Defendant had only a twenty percent ownership interest in AutoSource.

Defendant filed his Chapter 7 bankruptcy petition on November 5, 2007.

## CONCLUSIONS OF LAW

Plaintiff seeks denial of a discharge to Defendant under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6). To prevail, Plaintiff must prove each of the elements of those sections of the Bankruptcy Code by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279 (1991). The Bankruptcy Code should be construed liberally in favor of the debtor. *In re Keeney*, 227 F.3d 679, 683 (6th Cir. 2000).

### 11 U.S.C. § 523(a)(2)(A)

To obtain an exception from discharge under 11 U.S.C. § 523(a)(2)(A), a plaintiff must prove each of the following essential elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) the creditor's reliance was the proximate cause of loss. *See In re Rembert*, 141 F.3d 277, 280-81 (6th Cir. 1998). The debtor's intent is assessed by a subjective standard looking at the totality of the circumstances, and all exceptions to discharge are to be strictly construed against the creditor. *Id.* at 281-282.

Plaintiff fails to prove that Defendant intended to defraud Plaintiff. The record shows that

Defendant, while undoubtedly aware of the financial troubles facing AutoSource, had no knowledge that AutoSource was selling vehicles out of trust. Defendant's testimony indicates that he relied on Ken to run the business; his own role was limited. Defendant inquired as to the missing vehicles and took no further action upon receiving what he believed to be plausible explanations for the absence of the vehicles from AutoSource's inventory. The fact that a more diligent investigation would have revealed that the vehicles were sold out of trust is not indicative of Defendant's subjective intent to deceive Plaintiff. Without more, Plaintiff has failed to meet his burden of proving that Defendant intended to defraud Plaintiff by a preponderance of the evidence.

Because Plaintiff has failed to establish any fraudulent intent on the part of Defendant, the Court must find in favor of Defendant with respect to this claim.

### 11 U.S.C. § 523(a)(4)

Under 11 U.S.C. § 523(a)(4), three distinct acts of malfeasance can create an exception to discharge, including "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." To withhold a debt from discharge for "fraud or defalcation while acting in a fiduciary capacity," the Court must find that an express or technical trust existed between the parties. *Brady v. McAllister* (*In re Brady*), 101 F. 3d 1165, 1173 (6th Cir. 1996). The term fiduciary under section 523(a)(4) "does not extend to implied trusts, which are imposed on transactions by operation of law as a matter of equity." *Id.* (quoting *Riden v. Sigler* (*In re Sigler*), 196 B.R. 762, 764 (Bankr. W.D. Ky. 1996)).

The term "fiduciary capacity," however, does not modify the words "embezzlement" or "larceny." *In re James*, 42 B.R. 265, 267 (Bankr. W.D. Ky. 1984). The Court need not find a fiduciary relationship existed to hold the debt nondischargeable on the grounds of embezzlement or larceny. *Id.* To succeed on a theory of embezzlement, the Plaintiff must prove that "(a) the Debtor appropriated funds for his own benefit, and (b) he did so with fraudulent intent or deceit. Both the intent and the actual misappropriation necessary to prove embezzlement may be shown by circumstantial evidence." *Id.* To succeed on a theory of larceny, the Plaintiff must show that the Defendant has "wrongfully and with fraudulent intent taken property from its owner." *In re Rose*, 934 F.2d 901, 903 (7th Cir. 1991).

In this case, there are clearly no express or technical trusts at issue. Furthermore, as with the

4

claims discussed above, there is no proof that Defendant intended to deceive or defraud Plaintiff. Accordingly, this claim must fail.

11 U.S.C. § 523(a)(6)

To establish that a debt is nondischargeable under 11 U.S.C. §523(a)(6), a plaintiff must prove that the debtor not only intended the act that caused the harm, but intended the harm. *See Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998). In this case, as with the claims discussed above, Plaintiff failed to provide any proof that Defendant intended to harm Plaintiff. Therefore, this claim, too, fails.

A separate Order consistent with the foregoing has been entered in accordance with Federal Rule of Bankruptcy Procedure 9021.

Thomas H. Fulton
United States Bankruptcy Judge

Dated: October 29, 2009